UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

Ryan Brandon, )
 )
     *Plaintiff*, )
 )
v. ) Case No.: 3:10-CV-559-PLR-HBG
 )
City of Harriman, *et al.*, )
 )
     *Defendants*. )

## **Memorandum Opinion and Order**

This § 1983 action comes before the Court on defendant Officer Jajuan Hamilton's motion for summary judgment. [R. 43]. Officer Hamilton asserts that he is entitled to qualified immunity because the plaintiff's constitutional rights were not violated and, even if they were, those rights were not clearly established at the time of the violation. The Court agrees. For the reasons discussed below, Officer Hamilton's motion for summary judgment will be granted.

I.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating

lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id*. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

II.

The facts of this case are fairly simple. After 12:00 a.m. on December 28, 2009, Ryan Brandon was seen fleeing the scene after allegedly vandalizing a vehicle. After responding to the vehicle owner's call, Sgt. Jack Martin, the shift supervisor, told Officer Hamilton about the

incident and instructed him to be on the lookout for Mr. Brandon. A short time later Officer Hamilton responded to a call about a robbery in progress. It turned out that Mr. Brandon had been banging on the front door of a residence where he got into some sort of altercation with a female resident. There was no attempted robbery as initially reported. Nevertheless, having been involved in two separate incidents that evening, Sgt. Martin ordered Officer Hamilton to search the area to try and find Mr. Brandon.[1]

It only took Officer Hamilton a couple minutes to find Mr. Brandon, who was walking down the road a few hundred yards from the residence. Despite it being nearly one in the morning in late December, Mr. Brandon was not wearing shoes or a coat. Officer Hamilton (who was wearing his uniform) pulled up beside Mr. Brandon in his marked police car, and told Mr. Brandon to stand in front of the car. Mr. Brandon replied "for what," prompting Officer Hamilton to repeat the order. As Officer Hamilton began to exit his police car, Mr. Brandon exclaimed "I'm not going to jail" and fled down the street. Officer Hamilton ran after him, and deployed his taser when he got close enough. The taser caused Mr. Brandon's body "lock up," and he fell. Unable to halt his fall with his hands, Mr. Brandon hit the ground chin first, breaking his jaw and several teeth.

Mr. Brandon filed this lawsuit on December 24, 2010, asserting a § 1983 claim for violation of his Fourth Amendment rights and a state law claim for battery. The case was stayed during the course of Mr. Brandon's criminal proceedings where he was convicted of public intoxication and evading arrest (he was not charged for vandalizing the car). The Tennessee Court of Appeals vacated the evading arrest conviction, but affirmed the public intoxication conviction. This Court lifted the stay on April 16, 2015, after which Officer Hamilton moved for summary judgment on qualified immunity grounds.

---

[1] Officer Hamilton had dealt with Mr. Brandon before, and they both apparently knew each other.

3

III.

While the complaint is a little vague, it appears that Mr. Brandon is asserting two separate constitutional violations: *first*, that Officer Hamilton arrested Mr. Brandon without probable cause and, *second*, that Officer Hamilton's use of the taser to seize Mr. Brandon constituted excessive force. Officer Hamilton argues that the arrest without probable cause claim is foreclosed by Mr. Brandon's conviction for public intoxication, and that his use of a taser was reasonable. Finally, even if using the taser did violate Mr. Brandon's right against unreasonable seizure, Officer Hamilton argues that he is entitled to qualified immunity because that right was not clearly established at the time of the incident.

**A. Probable Cause for Arrest**

We will begin with Mr. Brandon's probable cause claim. Where a defendant contests probable cause in a criminal proceeding, a finding of probable cause in that action bars re-litigating the issue in a subsequent § 1983 action. *Smith v. Buttry*, 111 F. App'x 372, 374 (6th Cir. 2004) (citing *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998)). In his criminal trial, Mr. Brandon had a full fair opportunity to challenge his seizure as being made without probable cause. The judge rejected that argument based on the fact that Mr. Brandon had been involved in multiple incidents, was walking down the road in the middle of the night in late December without shoes or a coat, and fled from the police after exclaiming the he was "not going to jail." As far as the judge was concerned:

> The officer had plenty of probable cause to detain this suspect until he could see what was going on. And the totality of the circumstances make[s] it not only legal, but necessary under the circumstances.

[R. 43-2, Trial Court Suppression Hearing Transcript, Page ID 196-97].

4

While Mr. Brandon successfully appealed his evading arrest conviction (based on the idea that Officer Hamilton was not actually trying to arrest Mr. Brandon when he fled), the Tennessee Court of Criminal Appeals upheld the public intoxication conviction, and Mr. Brandon did not appeal the legality of the seizure itself. The trial court's decision that Officer Hamilton had probable cause to detain Mr. Brandon was a final decision on the merits that was not reversed or even raised on appeal. Accordingly, Mr. Brandon cannot assert a claim for being arrested without probable cause in this § 1983 action.

**B. Excessive Force**

Having concluded that Officer Hamilton had probable cause to seize Mr. Brandon, we turn now to the manner in which he carried out the seizure. Did Officer Hamilton's use of a taser violate Mr. Brandon's right to be free from the use of excessive force? If so, was that right clearly established at the time of the incident?

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stoudemire v. Michigan Dept. of Corrections*, 705 F.3d 560, 567 (6th Cir. 2013) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008)). Qualified immunity analysis is a two-step process, where the court considers (1) whether the defendant's action violated a constitutional right; and (2) whether that right was clearly established such that a reasonable officer would understand that he is violating it. *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The Fourth Amendment guarantees the right against unreasonable search and seizure; however, the Supreme Court has long held that "the right to make an arrest or investigatory stop

5

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 21-27 (1968)). The reasonableness of the seizure cannot be weighed mechanically or precisely defined; instead courts weighing the reasonableness of an officer's actions must carefully consider the facts and circumstances of each particular case, including the severity of the crime at issue, the danger posed by the suspect, and whether the suspect is actively resisting arrest or attempt to flee. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Finally, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Mr. Brandon asserts that using the taser to seize him was unreasonable because Officer Hamilton did not give a verbal warning ahead of time and because Officer Hamilton could have used a less dangerous method seizing him. Mr. Brandon cites *Eldridge v. City of Warren*, 533 F. App'x 529, 534-35 (6th Cir. 2013), for the proposition that a suspect has the right to be free of physical force "when he is not resisting police efforts to apprehend him." He also notes that, by mid-2005, "[t]he general consensus among [the Sixth Circuit's] cases [was] that officers cannot use force . . . on a detainee who has been subdued, is not told he is under arrest, or is not resisting arrest." *Goodwin v. City of Plainsville*, 781 F.3d 314, 326 (6th Cir. 2015).

Applying those holdings to the present case, Mr. Brandon makes the dubious assertion that he did not know Officer Hamilton was pursuing him. Accordingly, because he did not know he was being detained or pursued, he had a clearly established right not to be tased without first being warned or ordered to stop. At the least, Mr. Brandon argues that, because Officer

6

Hamilton is physically fit, he should have used his athleticism to grab or tackle Mr. Brandon instead of tasing him.

Unlike the suspects discussed in the cases he cites, Mr. Brandon *was* resisting police efforts to apprehend him. This was not the case of an officer using force on a detainee who had already been subdued or was otherwise complying with police orders. More applicable is the analysis in *Cockrell v. City of Cincinnati*, 468 F. App'x 491 (6th Cir. 2012). In *Cockrell*, after a police officer observed a suspect jaywalking, the officer got out of his car and ran towards the suspect. The suspect fled, and after a short chase, without ever ordering the suspect to stop or telling him that he was under arrest, the officer tased him. *Id.* at 492. The taser paralyzed the suspect, causing him to crash headlong into the pavement just like Mr. Brandon did in this case. *Id.* In the subsequent § 1983 action, the Sixth Circuit considered "whether a misdemeanant, fleeing from the scene of a non-violent misdemeanor, but offering no other resistance and disobeying no official command, had a clearly established right not to be tased on July 3, 2008." *Id.* at 495.

The Sixth Circuit noted that cases addressing qualified immunity in the context of a suspect being tased fall into two groups—cases with suspects actively resisting arrest by struggling with, threatening, or disobeying officers and cases where law enforcement officers tased a suspect who had done nothing to resist arrest or were already detained. *Id.* at 495-96 (collecting cases). In the first category, courts have concluded that either no constitutional violation occurred or that the right not to be tased while resisting arrest was not clearly established at the time of the incident. In the second category of cases, courts have held that qualified immunity is not applicable because "the right to be free from physical force when one

7

is not resisting the police is a clearly established right." *Id.* at 496 (quoting *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010)).

The facts in *Cockrell* did not fit cleanly within either of these categories. While Mr. Cockrell did not use violence, make threats, or disobey a command to stop, he did flee, and "flight, non-violent though it may be, is still a form of resistance." *Id.* The *Cockrell* court explained that no case where the court denied qualified immunity involved a fleeing plaintiff. On the other hand, "in all cases where a plaintiff fled from police, the court held that qualified immunity was appropriate, and some courts referred specifically to the plaintiff's flight." *Id.* at 497. In the end, the *Cockrell* court held that the suspect did not have a clearly established right not to be tased while fleeing, despite only being a misdemeanant and not receiving any warnings or commands to stop. *Id.*

*Cockrell* is directly on point for the case at hand. While Mr. Brandon did not use violence or make threats, he did disobey Officer Hamilton's order to step in front of the police car, and after exclaiming that he was not going to jail, he attempted to flee. Mr. Brandon was actively resisting by fleeing, and his claim not to know he was being pursued is directly contradicted by his exclamation prior to running that he was not going to jail.[2] As July 3, 2008 (the date the plaintiff in *Cockrell* got tased), there was no clearly established right not to be tased when actively fleeing from the police, even where the police fail to give a verbal warning prior to using the taser. Mr. Brandon has failed to cite any case establishing such a right between July 2008 and December 2009, when Officer Hamilton tased Mr. Brandon.

Finally, while Mr. Brandon argues that Officer Hamilton could have used his superior athleticism to tackle Mr. Brandon instead of using the taser, it is not self-evident that such a course of action would have been less likely to result in injury. While there is certainly risk

---

[2] This is clearly audible on the dashcam video submitted by the plaintiff [R. 25]

8

Case 3:10-cv-00559-PLR-HBG   Document 56   Filed 03/22/16   Page 8 of 9   PageID #: 952

associated with tasing a running suspect, there is also risk (to both the suspect *and* the officer) associated with tackling a running suspect from behind. In sum, Mr. Brandon has not persuaded the Court that at the time of the incident the law was so clearly established that every reasonable official would have understood that using a taser to apprehend the fleeing suspect was unconstitutional. Officer Hamilton is entitled to qualified immunity on Mr. Brandon's § 1983 claim.

Finally, there is Tennessee authority that confers qualified immunity to state law torts. *Rogers v. Gooding*, 84 F. App'x 473, 477 (6th Cir. 2003) (citing *Youngblood v. Clepper,* 856 S.W. 2d 405 (Tenn. Ct. App. 1993)). Because Officer Hamilton is entitled to qualified immunity on his § 1983 claim, he is also entitled to qualified immunity on his state law battery claim. *See Id.* (holding that district court in § 1983 excessive force case properly applied qualified immunity defense to an assault and battery claim).

IV.

For the foregoing reasons, Jajuan Hamilton's motion for summary judgment [R. 43] is **Granted**. Officer Hamilton is **Dismissed** as a party to this case.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**